THERESA SCHWERDTFEGER,

      Plaintiff,

      v.

ALDEN LONG GROVE REHABILITATION AND
HEALTH CARE CENTER, INC., LESLEY
HIERAS, AND LAMAR HASBROUCK IN HIS
OFFICIAL CAPACITY AS DIRECTOR OF THE
ILLINOIS DEPARTMENT OF PUBLIC
HEALTH,

      Defendants.

No. 13 C 8316

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Theresa Schwerdtfeger alleges that Alden Long Grove Rehabilitation and Health Care Center, Inc., and its administrator, Lesley Hieras, impermissibly discharged Schwerdtfeger in violation of (1) the Nursing Home Reform Act, 42 U.S.C. §§ 1395i-3, 1396r (the "NHRA"), *see* R. 1 ¶¶ 38-42 ("First Claim"); (2) the Illinois Nursing Home Care Act, 210 ILCS 45/1 *et seq.*, *see* R. 1 ¶¶ 43-47 ("Second Claim"); and (3) the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, *see* R. 1 ¶¶ 48-56 ("Third Claim"). Schwerdtfeger also alleges that Lamar Hasbrouck, in his official capacity as the Director of the Illinois Department of Public Health, failed to ensure that Schwerdtfeger received a proper administrative hearing upon her discharge from Alden in violation of the Due Process Clause of the Fourteenth Amendment. *See* R. 1 ¶¶ 57-63 ("Fourth Claim").

Alden and Hieras have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the NHRA does not provide Schwerdtfeger a private right of action. R. 19. Hasbrouck has also moved to dismiss, arguing that Schwerdtfeger failed to avail herself of the state process available for review of her discharge. R. 17. For the following reasons, both motions are granted, and the Court declines to exercise supplemental jurisdiction over Schwerdtfeger's state law claims.

## Background

Alden is a private nursing home (or "facility," as the NHRA puts it, 42 U.S.C. § 1396r(a)) that participates in the Medicaid program. R. 1 ¶ 14. Schwerdtfeger became a resident at Alden in 2007. *Id.* ¶ 18. The State of Illinois made monthly payments to Alden through the Medicaid program for Schwerdtfeger's care. *Id.* ¶ 19. In August 2012, Schwerdtfeger had a verbal dispute with a nurse and a verbal dispute with another resident. *Id.* ¶¶ 20-22. On August 28, 2012, at 7:30 p.m., when Schwerdtfeger was already in bed, Alden staff told her she was required to leave Alden. *Id.* ¶ 23. The staff called an ambulance that took Schwerdtfeger to Advocate Good Shepherd Hospital. *Id.* ¶ 24. The next day, August 29, Schwerdtfeger was transferred to Alexian Brothers Behavioral Health Hospital where she stayed until September 12 when she was transferred to Grove North Nursing Home. *Id.* ¶¶ 24, 28.

On August 29, administrator Heiras prepared and signed an "Emergency Notice of Involuntary Transfer or Discharge," or "IVD." *Id.* ¶ 25. The IVD stated

that "the safety of individuals in this facility is endangered." *Id.* Schwerdtfeger was served with the IVD on August 29 while she was in the hospital. *Id.* ¶ 26.

After being served with the IVD, Schwerdtfeger requested an administrative hearing with the Illinois Department of Public Health. *Id.* ¶ 27. During the administrative process, Schwerdtfeger's attorneys disputed the validity of the discharge and requested a hearing. *Id.* ¶ 31. On November 15, 2012, Alden withdrew its IVD but did not allow Schwerdtfeger to return to Alden. *Id.* ¶ 32; R. 1-1 at 3. Schwerdtfeger's attorneys continued to seek a hearing, but on December 12, 2012, Administrative Law Judge Omayra Giachello issued a report and recommendation recommending dismissal of the case because Alden had withdrawn its IVD. R. 1 ¶ 33; R. 1-1 at 2. On December 5, 2012, Chief Administrative Law Judge John Abrell issued a final order dismissing the case. R. 1 ¶ 33; R. 1-1 at 6. Schwerdtfeger alleges that "[n]o hearing on the validity of Ms. Schwerdtfeger's discharge was ever held." R. 1 ¶ 33. Schwerdtfeger filed this action in response on November 19, 2013. *See* R. 1.

Schwerdtfeger alleges, in relevant part, that Alden and Hieras's discharge of Schwerdtfeger violated the NHRA in that "[1] there was no emergency; [2] [Schwerdtfeger] was not provided proper notice of her involuntary discharge; [3] the listed reason for discharge, that safety of individuals in the facility was endangered, was not supported by the facts; [4] the facts relied upon by Defendants were insufficiently documented; [5] Defendants did not offer [Schwerdtfeger] counseling services; and [6] Defendant did not readmit [Schwerdtfeger] after the alleged

emergency had passed." R. 1 ¶ 40. Schwerdtfeger also alleges that Hasbrouck violated the Due Process Clause by "den[ying] [Schwerdtfeger] the right to reside at Alden nursing home without granting her the hearing guaranteed by state law[,] 210 ILCS 45/3-411." *Id.* ¶ 62.

Alden and Hieras argue that (1) the NHRA does not create private rights for nursing facility residents, and (2) even if NHRA does create such rights, the NHRA does not provide a private remedy for violation of those rights by nursing facility residents against private nursing facilities. *See* R. 35 at 2. Hasbrouck argues that Schwerdtfeger cannot state a claim for a Due Process violation because she did not avail herself of the process available to her. *See* R. 17 at 2.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Analysis**

**I.    Alden and Hieras**

Not all federal statutes provide a basis for a private individual to maintain a legal action against another private individual. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("[I]t is only violations of rights, not *laws*, which give rise to [private] actions.") (emphasis in original). In order to provide a basis for a private right of action, a federal statute must create both a *right* in favor of the plaintiff, and a *remedy* for a violation of that right against the defendant. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.").

"For a statute to create . . . private rights, its text must be 'phrased in terms of the persons benefited.'" *Gonzaga*, 536 U.S. at 284 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 692 n.13 (1979)). Only statutory "rights," and "not the broader or vaguer 'benefits' or 'interests,'" are actionable. *Gonzaga*, 536 U.S. at 283. The statutory terms creating such rights must be "clear and unambiguous," *id.* at 290,

and not so "vague and amorphous that its enforcement would strain judicial competence." *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).

For a statute to create a private remedy, the statutory language must "display[] an intent to create . . . a private remedy." *Sandoval*, 532 U.S. at 286. "Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. "[I]t is [not] the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose expressed by a statute." *Id.* at 287.

Notably, statutes like the NHRA, which are passed pursuant to the Constitution's Spending Clause,[1] "rarely confer[] upon funding beneficiaries the

---

[1] The Supreme Court has explained:

> The Spending Clause of the Federal Constitution grants Congress the power "[t]o lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." Art. I, § 8, cl. 1. The Clause provides Congress broad discretion to tax and spend for the "general Welfare," including by funding particular state or private programs or activities. That power includes the authority to impose limits on the use of such funds to ensure they are used in the manner Congress intends. *Rust v. Sullivan,* 500 U.S. 173, 195, n.4 (1991) ("Congress' power to allocate funds for public purposes includes an ancillary power to ensure that those funds are properly applied to the prescribed use.").
>
> As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds.

right to bring private actions 'before thousands of federal- and state-court judges'

against funding recipients." *Grammer v. John J. Kane Regional Ctrs.*, 570 F.3d 520,

532 (3d Cir. 2009) (Stafford, J., dissenting) (quoting *Gonzaga*, 536 U.S. at 290).

"[U]nless Congress speak[s] with a clear voice, and manifests an unambiguous

intent to confer individual rights, federal funding provisions provide no basis for

private enforcement." *Gonzaga*, 536 U.S. at 280; *see also Bruggeman v. Blagojevich*,

324 F.3d 906, 911 (7th Cir. 2003) (holding that a provision of the Medicaid Act, 42

U.S.C. § 1396(a)(19), did not create a private right "given the Supreme Court's

hostility . . . to implying such rights in spending statutes"). The Seventh Circuit has

stated, however, that there is no "broad rule that spending power statutes can never

be enforced by private actions. [Rather,] courts must examine each statutory

scheme closely." *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*,

603 F.3d 365, 378 (7th Cir. 2010).

Schwerdtfeger argues that the NHRA creates rights in favor of individual

nursing facility residents. R. 31 at 12-14. Specifically, Schwerdtfeger cites the

NHRA provision that a "nursing facility must care for its residents in such a

manner and in such an environment as will promote maintenance or enhancement

of the quality of life of each resident." 42 U.S.C. § 1396r(b)(1)(A). Schwerdtfeger also

notes that the NHRA provides "[t]ransfer and discharge rights," requiring that a

---

*Agency for Int'l Devel. v. Alliance for Open Soc. Int'l, Inc.*, 133 S. Ct. 2321, 2327-28
(2013). The NHRA, and the larger Medicaid Act of which the NHRA is a part, were
passed pursuant to the Spending Clause. *See Abraham Lincoln Mem. Hosp. v.
Sebelius*, 698 F.3d 536, 543 (7th Cir. 2012); *Ind. Ass'n of Homes for the Aging Inc. v.
Ind. Office of Medicaid Policy & Planning*, 60 F.3d 262, 264-65 (7th Cir. 1995).

"nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility" except under certain circumstances. *Id.* § 1396r(c)(2)(A). Schwerdtfeger further notes that the NHRA requires a nursing facility to document a decision to discharge or transfer a resident, *id.*, and provide 30 days' advance notice of the discharge or transfer, except in certain enumerated circumstances when notice is permitted "as many days before the date or transfer or discharge as is practicable." *Id.* § 1396r(c)(2)(B)(ii).

The statutory provisions Schwerdtfeger cites do not create private rights or remedies such that she has a private right of action under the NHRA. *See Slovinec v. Ill. Dep't of Human Servs.*, 2005 WL 442555, at *6-7 (N.D. Ill. Feb. 22, 2005) (holding that 42 U.S.C. § 1396r(c)(2)(B)(i) does not provide a private right of action). Congress did not "phrase" the NHRA provisions Schwerdtfeger cites "in terms that grant rights to" nursing facility residents. *See Ind. Prot. & Advocacy Servs.*, 603 F.3d at 375. Instead, Congress chose to impose obligations on the federal and state governments and nursing facilities requiring them to ensure that nursing facility residents receive certain benefits. The statutory provisions Schwerdtfeger cites—as well as many other subsections in 42 U.S.C. § 1396r—are phrased as obligations Congress imposed on the "nursing facility." *See* § 1396r(b)(1)(A) ("A nursing facility must . . . ."); § 1396r(c)(2)(A) ("A nursing facility must . . . ."); § 1396r(c)(2)(B)(i) ("a nursing facility must"). Although the NHRA is certainly intended to ensure that nursing facility residents receive certain benefits, Congress's decision to structure

receipt of these benefits as derivative of obligations imposed on nursing facilities indicates that Congress did not intend to create actionable rights for nursing facility residents.

Furthermore, the NHRA's provisions requiring the federal and state governments to monitor whether nursing facilities are in compliance with the NHRA demonstrate that the federal and state governments and the nursing facilities are the primary and secondary focuses of the statute. *See* 42 U.S.C. § 1396r(h)(1)(A)-(B), (2)(A) ("Enforcement process[.] . . . If a State finds . . . that a nursing facility no longer meets a requirement of subsection (b), (c), or (d) of this section . . . the State may . . . terminate the facility's participation under the State plan . . . . [and/or impose] (i) Denial of payment under the State plan . . . . (ii) A civil money penalty . . . . (iii) The appointment of temporary management . . . . (iv) The authority, in the case of an emergency, to close the facility . . . ."); *Id.* § 1396r(h)(3)(A)-(C) (the Secretary of the Department of Health and Human Services has the same enforcement powers as the states, but the Secretary also has the power to "deny any further payments to the State for medical assistance furnished by the facility"). Instead of simply and directly legislating that nursing facility residents have certain rights, Congress decided to structure the NHRA to require the federal and state governments to impose penalties on nursing facilities that fail to provide certain benefits to nursing facility residents. Because the statute (1) imposes funding and monitoring obligations on the federal and state governments, and (2) imposes service obligations on nursing facilities, the NHRA's

9

"focus [is] twice removed from the individuals who will ultimately benefit from [the statute]." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 377. The Supreme Court has held that such a statutory structure is indicative of a Congressional intent *not* to create actionable rights in favor of private individuals, but rather, to create "directives" for the "distribution of public funds." *See Sandoval*, 532 U.S. at 289; *id.* ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."); *Gonzaga*, 536 U.S. at 287 ("This focus is two steps removed from the interests of individual [plaintiffs] and clearly does not confer the sort of 'individual entitlement' that is [privately] enforceable . . . .").

Even if the NHRA provisions at issue created private rights in favor of individual nursing facility residents like Schwerdtfeger, the statute does not create a private remedy. Instead, the NHRA creates "separate administrative enforcement mechanisms . . . . 'suggest[ing] that Congress intended to preclude other[]' [enforcement methods]." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 379 (quoting *Sandoval*, 532 U.S. at 290). In order to receive federal Medicaid funding, the NHRA requires states to provide an "appeals process for transfers and discharges." 42 U.S.C. § 1396r(e)(3). The statute also provides that a "resident's right to appeal [a] transfer or discharge" is pursuant to "the State process established under subsection (e)(3)." *Id.* § 1396r(c)(2)(B)(iii)(I). Moreover, as noted above, the administrative process available to private individuals is a supplement to the thorough enforcement powers that Congress granted to the federal and state

governments. *See Id.* § 1396r(h). Congress's provision of an administrative remedial process for nursing facility residents, and Congress's decision to reserve that process to the state courts in the context of broad enforcement powers entrusted to the federal and state governments, is a strong indication that Congress did not intend for individual nursing facility residents to have a private right of action under the NHRA.

With regard to whether the NHRA creates private rights, Schwerdtfeger argues that the NHRA is replete with language describing the "rights" of nursing facility residents. R. 31 at 13-15. Schwerdtfeger is correct that the word "right" appears frequently in the NHRA in connection with nursing facility residents. But Congress's use of the word "rights" is not dispositive of whether Congress intended to create rights actionable by individuals, and any "rights" the statute grants to nursing facility residents must be understood in the context of the rest of the statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18-19 (1981). The "rights" provided by the NHRA are not absolute federal rights, but qualified rights in that the rights exist only because a nursing facility participates in a federally funded Medicaid plan. The NHRA does not grant any rights to nursing facility residents who reside in nursing facilities that do not participate in Medicaid. Furthermore, Congress has clearly and unambiguously provided a remedial process for nursing facility residents to enforce the rights the NHRA provides in state courts. Rights qualified by their statutory context are not actionable outside the remedial process provided by that statute. *See Ind. Prot. & Advocacy Servs.*, 603

F.3d at 379 (the presence of "separate administrative enforcement mechanisms comparable to those that were important factors in *Sandoval* [and] *Gonzaga* . . . . 'suggest[s] that Congress intended to preclude others.'" (quoting Sandoval, 532 U.S. at 290)).

Schwerdtfeger also cites a number of cases holding that various provisions of the Medicaid Act create private rights. R. 31 at 15 (citing *Grammer*, 570 F.3d 520; *Rolland v. Romney*, 318 F.3d 42 (1st Cir. 2003); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280 (E.D.N.Y. 2008); *Ottis v. Shalala*, 862 F. Supp. 182 (W.D. Mich. 1994); *Martin v. Voinovich*, 840 F. Supp. 1175 (S.D. Ohio 1993)). In all of these cases, however, the defendants were state actors such that the remedies created by 42 U.S.C. § 1983 were available to the plaintiffs in those cases.[2] Here, Alden is a private nursing facility, and thus, is not a state actor subject to Section 1983. *See Blum v. Yaretsky*, 457 U.S. 991, 1012 (1982) ("We conclude that [the individual plaintiffs] have failed to establish 'state action' in the nursing homes' decisions to discharge or transfer Medicaid patients to lower levels of care."); *Turner v. Jackson Park Hosp.*, 264 Fed. Appx. 527, 529-30 (7th Cir. 2008) ("[The Plaintiff] cannot state a claim under § 1983 because she has sued a private hospital and private individuals and, therefore, cannot claim that defendants were acting under color of state law, an element of any § 1983 claim."); *see also James v. Arevalo*, 2014 WL 1321280, at *3 (N.D. Ill. Apr. 2, 2014) ("[A] private hospital, and its employees . . . . [did] not act[] under color

---

[2] The one case Schwerdtfeger cites in which the defendant was a private facility was dismissed for that reason. *See Soto v. Lene*, 2011 WL 147679, at *2 (E.D.N.Y. Jan. 18, 2011).

of state law, [and] Section 1983 cannot confer federal question jurisdiction over Plaintiff's claim."). "The receipt of federal funds alone is not sufficient to establish state action." *Turner*, 264 Fed. Appx. at 530 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982)). Thus, to the extent the cases Schwerdtfeger cites hold that the NHRA or other Medicaid Act provisions create private rights enforceable pursuant to Section 1983, those cases do not help Schwerdtfeger establish that the NHRA provisions at issue here create private remedies against a private nursing facility like Alden.

Furthermore, the Third Circuit's reasoning in *Grammer*—the case upon which Schwerdtfeger primarily relies—that various subsections of 42 U.S.C. §1396r grant private rights to individual nursing facility residents is inconsistent with the Supreme Court's reasoning in *Sandoval* and *Gonzaga*. In *Grammer*, the Third Circuit relied on an earlier decision—*Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004)—in which it noted that the Supreme Court cited Title VI, 42 U.S.C. § 2000d, and Title IX, 20 U.S.C. § 1681(a), as containing classic rights-creating language in a statute passed pursuant to the Spending Clause—i.e., "No person in the United States shall . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 570 F.3d at 528 (citing *Gonzaga*, 536 U.S. at 284). The Third Circuit determined that this language was "difficult, if not impossible, as a linguistic matter, to distinguish" from the relevant Medcaid Act language in that case—i.e., "A State plan must provide . . . ." *Sabree*, 367 F.3d at 190. The Third Circuit held that the NHRA's language at issue in *Grammer*—i.e., "a

nursing facility must provide," (which is the same language at issue in Schwerdtfeger's case)—was equally analogous to the Title VI and Title IX language cited by the Supreme Court. *Grammer*, 570 F.3d at 529. Thus, the Third Circuit also held that the NHRA granted private rights to individual nursing facility residents. *Id.*

Contrary to the Third Circuit's holding, the Court finds that there is a significant difference between the language of Titles VI and IX, which directly applies to individual "persons," and the NHRA's language which only applies to individual residents through the agreement of states to accept federal funds to create certain plans which will provide certain benefits to individuals residents. It is just this two-step removal of individual residents from the focus of the statute that the Supreme Court says indicates that Congress did not intend to create private rights actionable by individuals. The Third Circuit gave only cursory consideration to the Supreme Court's reasoning that "two-step" removal is indicative of a lack of Congressional intent to create individual rights, simply stating, "We are not concerned that the provisions relied upon [here] are phrased in terms of responsibilities imposed on the state or the nursing home." *Grammer*, 570 F.3d at 530. The Court is bound by the Seventh Circuit's admonition to take the Supreme Court's "two-step" analysis seriously. *See Ind. Prot. & Advocacy Servs.*, 603 F.3d at 379. A statute "phrased in terms of responsibilities imposed on the state or the

nursing home," tied to federal funding pursuant to the Spending Clause, does not create private rights actionable by individuals.[3]

Schwerdtfeger correctly points out that the Seventh Circuit has stated that there is no absolute prohibition on federal statutes based on the Spending Clause creating actionable rights. R. 31 at 17. The statutory provisions that led the Seventh Circuit to hold that even Spending Clause statutes can sometimes create private rights contained language that granted rights directly to the plaintiff in that case: "[the plaintiff] 'shall . . . have access to all records,'" and "[the plaintiff] 'shall have the authority to pursue administrative, legal, and other appropriate remedies.'" *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 378 (quoting 42 U.S.C. § 10805(a)(4), (1)(B)). This statutory language does not raise the two-step removal problem of *Sandoval* and *Gonzaga*, however, because the "key language is not directed at an administrator or federal funds or even at the State . . . as a funding recipient. Instead, the [statute] directly grants rights and powers to . . . the plaintiff here." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 378. Critically, there is no analogously direct language in the NHRA's provisions upon which Schwerdtfeger bases her claims. Rather, as the Court has previously discussed, 42 U.S.C. §

---

[3] Notably, other district court decisions have similarly questioned *Grammer's* faithfulness to the principles enunciated in *Sandoval* and *Gonzaga*. *See Sanguinetti v. Avalon Health Care, Inc.*, 2012 WL 2521536, at *4-5 (E.D. Ca. June 28, 2012); *Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 420-28 (N.D.N.Y. 2011); *Hawkins v. Cnty. of Bent*, 800 F. Supp. 2d 1162, 1167 (D. Colo. 2011); *Duncan v. Johnson-Mathers Health Care, Inc.*, 2010 WL 3000718, at *8-10 (E.D. Ky. July 28, 2010); *see also Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1330-31 (N.D. Ga. 2000) (holding that "Congress [did not] intend[] to authorize nursing home residents to file suit against nursing homes to enforce the standards required for participation in the Medicare and Medicaid programs." (citing cases)).

1396r(b)(1)(A), 42 U.S.C. § 1396r(c)(2)(A), and 42 U.S.C. § 1396r(c)(2)(B)(i) are all structured to place obligations on nursing facilities in the context of monitoring and funding by the federal and state governments. This language does not manifest a "clear and unambiguous" Congressional intent to create private rights in favor of individual nursing facility residents like Schwerdtfeger.

The language and structure of the NHRA provisions at issue here do not create private rights for nursing facility residents. Additionally, the NHRA provides an administrative remedial process in the state courts rather than a private remedy in federal court. For these reasons, Schwerdtfeger does not have a private right of action under the NHRA and Schwerdtfeger's First Claim is dismissed.

## II.    Hasbrouck

Schwerdtfeger also alleges that Hasbrouck violated the Due Process Clause of the Fourteenth Amendment by "den[ying] [Schwerdtfeger] the right to reside at Alden nursing home without granting her the hearing guaranteed by state law[,] 210 ILCS 45/3-411." R. 1 ¶ 62. Schwerdtfeger, however, does not allege that Hasbrouck, the Director of the Illinois Department of Public Health, had any involvement with the initial decision to transfer Schwerdtfeger out of Alden. Schwerdtfeger's real claim must be that since the Illinois Department of Public Health is responsible for the administrative hearing process available to nursing facility residents to appeal nursing facility discharges, and Schwerdtfeger alleges that "[n]o hearing on the validity of Ms. Schwerdtfeger's discharge was ever held,"

R. 1 ¶ 33, Hasbrouck is the proper defendant for Schwerdtfeger to claim that she did not receive adequate procedural due process.

Schwerdtfeger does not dispute that Illinois law provides her the opportunity to appeal an administrative decision in the Circuit Court, *see* 210 ILCS 45/3-713; 735 ILCS 5/3-104, and she failed to avail herself of this opportunity. Instead, Schwerdtfeger argues that the Circuit Court "would not [have been] able to examine whether her discharge was authorized under [Illinois and federal law]" because the Circuit Court's review would have been limited to the administrative record, which due to Alden's withdrawal of its discharge notice, "did not include any evidence or testimony regarding Ms. Schwerdtfeger's discharge." R. 31 at 8-9 (citing 735 ILCS 5/3-110). The issue on appeal to the state court, however, would not have been whether Schwerdtfeger's discharge was proper, but whether the process Schwerdtfeger received in the administrative court was adequate and proper. If the Circuit Court found that the administrative court erred, the Circuit Court could have remanded Schwerdtfeger's case to the administrative court, which then would have examined the facts of Schwerdtfeger's case. *See* 735 ILCS 5/3-111(a)(6)-(7). Without having availed herself of this opportunity for review by the Circuit Court, Schwerdtfeger cannot claim that Hasbrouck and his Department failed to provide her with due process. *See Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 806-07 (7th Cir. 2010) (holding that the plaintiff's "failure to avail herself of available state remedies is . . . fatal to her federal due process claim," because a "'state cannot be held to have violated due process requirements when it has made procedural

protection[s] available and the plaintiff has simply refused to avail himself of them.'" (quoting *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982)).

Schwerdtfeger argues that the administrative court's actions were not "random and unauthorized," but constituted "an established state procedure," such that "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Leavell*, 600 F.3d at 805. The problem with Schwerdtfeger's reasoning is that it assumes that that the *administrative court* deprived her of a property right. But Schwerdtfeger cannot dispute that Alden had already deprived her of her right to live at Alden when the administrative court was presented with her case. That is why Schwerdtfeger appealed to the administrative court for relief. Schwerdtfeger asked the administrative court to order Alden to readmit her, and this request itself assumes that Schwerdtfeger had already been deprived of the right to live at Alden. Thus, Schwerdtfeger was required to pursue the entirety of the state process available to her before she could claim that Hasbrouck violated her due process rights.[4] She failed to do so.

---

[4] The Court's disposition of this motion makes it unnecessary for the Court to address Hasbrouck's arguments that Schwerdtfeger's claims are moot or that the Court should abstain pursuant to *Younger v. Harris*.

## Conclusion

For the foregoing reasons, Alden and Hieras's motion, R. 19, is granted, Hasbrouck's motion, R. 17, is granted, and Schwerdtfeger's federal law claims (First and Fourth Claims) are dismissed with prejudice. The Court declines to exercise jurisdiction over her state law claims (Second and Third Claims).

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 12, 2014